ORIGINAL

FILED

DEC 1 2 2016

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES OF AMERICA
## COURT OF FEDERAL CLAIMS

ZACHARY R. E. RUSK,                                                          COMPLAINT

Plaintiff/Petitioner,

Case no:

v.                                                            **16-1640 C**

UNITED STATES OF AMERICA

Defendant/Respondent.

Pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, Plaintiff Zachary R. E. Rusk ("Mr. Rusk" or "Plaintiff") files this Complaint, which alleges the occurrence of jurisdictional facts against the United States of America that could not have been pleaded before those jurisdictional facts occurred. Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.  The Court has subject matter jurisdiction over Plaintiff's FTCA claims under 28 U.S.C. § 1331 and § 1346(a) and § 1346(b) and because the claim is for over $10,000.

2.  The Court has personal jurisdiction over the United States of America.

### PARTIES

4. Plaintiff Zachary R. E. Rusk is, and at all times relevant was, a citizen of Utah working and residing in or near Salt Lake City.

5. Defendant United States of America is sued for Plaintiff's personal injuries caused by the negligent or wrongful acts or omissions of its employees. Those employees were acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the laws of the State of Utah. See 28 U.S.C. § 1346(b).

### FACTUAL ALLEGATIONS

RECEIVED - USCFC

DEC 1 2 2016

1. On or around December 3rd 2015, Rusk filed a suit against Fidelity Brokerage Services. On December 4th 2016, Judge Furse, recused from the case. Judge Wells was assigned to the case. On December 15th 2016, Rusk provided medical reports showing disability and incapacitation, along with a request for appointment of counsel. On January 7th 2016, Judge Parish appointed Judge Wells to handle the case up to and including R&R on all dispositive matters. On January 26th 2016, Judge Wells ordered appointment of pro bono counsel. The same day, Jason Boren, the FBS counsel, moved to dismiss complaint upon basis of rules and formatting, without denying or disputing the facts of the claims, nor providing any uncontroverted evidence thereof. Between January 26th and February 23rd, Rusk supplied more evidence. On February 23rd, Jason Boren moved to submit for decision based again, on rules and formatting or for a more definitive statement. On February 26th, Rusk supplied a further more definitive statement. On March 8th, Wells ordered Rusk to not file anything further on the Rusk v. Fidelity Brokerage Services case.

2. On March 14th, Rusk filed a case against Cowboy Properties alleging discrimination and retaliation based on disability when applying for their IRS Section 42 Housing. Judge Wells was assigned to this case as well. The judge stated: ''Defendant [Cowboy Properties] discriminated against Plaintiff [Rusk] on the basis of his disability in violation of the Fair Housing Act by requiring Plaintiff to provide documents Defendant knew he could not obtain. Defendant does not appear to address Plaintiff's claim that Defendant retaliated against him for engaging in protected activity (filing a charge of discrimination with "HUD in Denver" on January 19th). '' [Utah Department of Labor handles discrimination charges for employment and housing discrimination. The Utah department of labor failed to serve Fidelity Brokerage Services and Cowboy properties with a charge of discrimination. As a result, the EEOC had to served FBS with the charges of discrimination and US HUD had to serve Cowboy Properties with a charge of discrimination.]

3. On April 22nd 2016, the Chief Deputy Clerk of the U.S. District Court for the District of Utah, Anne Morgan, emailed Mr Rusk, stating that Rusk "may not file anything until counsel has been secured to discuss with you whether you have a cognizable claim" So far, no attorney has been found who is willing to accept this assignment. The reasons that attorneys have declined to evaluate your case include (1) some law firms have had conflicts with Fidelity because they sometimes represent Fidelity; and (2) some firms have a standing policy of not representing plaintiffs in employment discrimination suits. The Magistrate Judge will not let this go on indefinitely, but the timing is up to her. In the meantime, I will keep trying to find an attorney who is willing to accept this limited appointment."

4. On April 25th 2016, Rusk filed against the SSA Commissioner/Utah ODAR Office for injunctive relief and granting SSDI, due to the shown evidence of discrimination, retaliation and colluding as well as attempts to unreasonably delay shown on the docket - this includes the Utah ODAR office requesting medical reports more than once aver a period of months even after there is evidence shown of the Utah ODAR Office already having been in receipt of such. This case was assigned to Judge Warner. The US District Attorney claimed immunity under the 11th amendment. Rusk moved for appointment of counsel. The motion was denied by Judge Warner. [The case was later settled when SSDI was granted). The motion to dismiss was never ruled upon after around six or more months.

5. On April 25th, Rusk also filed a case against the State of Utah involving the Third District Court for discriminating against Rusk when Rusk has applied for protective orders, and Department of Workforce Services for discriminating against Rusk when Rusk has applied for Unemployment Insurance, Utah Department of Labor (Utah DoL) for discriminating against Rusk when Rusk has filed complaints against Fidelity Brokerage Services and Cowboy Properties, as well as Department of Occupational and Professional Licensing (DOPL) for discriminating against Rusk when Rusk was required to file a complaint warranting investigation (wherefore DOPL refused to fulfill its its duty and due diligence, infringing upon due process) into the alleged and undisputed facts and uncontraverted involving gross medical negligence and medical malpractice against the University of Utah Healthcare. The Utah District Attorneys again claimed immunity under the 11th amendment. The case was assigned to Judge Campbell who stated the 11th amendment applies regardless of relief sought. While untrue, denoting a number of laws, backed by evidence and convincing arguments inclusive of the State of Utah in being in receipt of federal funding and the relevance of application of 'ex parte young' further demonstrating continuous civil rights violations warranting ordering prospective injunctive relief to deter and address, Rusk appealed to the 10th circuit including that of seeking injunctive relief such as that of granting the protective orders against Colton Chase Christensen and Steven Samuel Rusk (Rusk Sr.). Christensen can be shown to have filed falsified injunctions and Steven Samuel Rusk has a shown continued history of abuse to Rusk jr - Zachary R E Rusk (along with the doctor involved in the University of Utah healthcare medical malpractice and gross negligence case - Rusk v. University of Utah Healthcare). Furthermore and interestingly...Judge Campbell originally dismissed the complaint against the State of Utah 'with prejudice' but upon immediate notice of appeal, quickly amended her order to state dismissed "without" prejudice...

6. On April 22nd, Rusk moved for appointment of counsel on the Rusk v. Cowboy Properties case. On May 3rd, Rusk moved for a protective order against the Counsel of Cowboy

Properties to be non-threatening and limit outreach to no more than three times a day. On May 12th 2016, Wells denied both motions.

7. On May 16th 2016, Rusk submitted evidence to the court showing documentation of superior character reviews and documentation of witness testimony noting fraud from the University of Utah Healthcare (who are shown to have engaged in tortuous interference and FMLA retaliation with FBS, as well as a history of discrimination against Rusk, shown to have gone on for over a decade in the preponderance of evidence). On the same day, May 16th 2016, Judge Wells, a graduate of University of Utah, immediately sealed these documents and then recused. Judge Warner is assigned to the Rusk v. Fidelity Brokerage Services case (as well as the Rusk v. SSA Commissioner / Utah ODAR et al case). Judge Pead is assigned to replace Wells in the Rusk v. Cowboy Properties case.

8. On May 17th, a Fidelity employee writes Rusk emails stating things such as 'fuck you' and 'you are retarded' after he found out that Rusk filed a lawsuit against Fidelity Brokerage Services. This individual has a history of being LDS/Mormon and non-ADA conditions, unlike Rusk, and just like the Fidelity manager that asked Rusk in texts 'what kind of underwear' Rusk is wearing and to come cuddle with him. [This was a manager for a department for which Rusk applied to and can be seen as qualified and competitive for, but was rejected from.] Ongoing thereafter, Rusk continually receives unsolicited Facebook and LinkedIn Messages and Requests from Fidelity Employees. On June 15th 2016, given ongoing abuse shown in the preponderance of evidence (Judge Warner Sealed), Rusk files motion to Prohibit [FBS] Agents from Communicating with Plaintiff/Rusk.

9. On June 24th 2016 Rusk filed an addendum to his FBS complaint including: Executive Order 11246 — https://www.dol.gov/ofccp/regs/compliance/ca_11246.htm The Executive Order prohibits federal contractors and federally–assisted construction contractors and subcontractors, who do over $10,000 in Government business in one year from discriminating in employment decisions on the basis of race, color, religion, sex, sexual orientation, gender identity or national origin. The Executive Order also requires Government contractors to take affirmative action to ensure that equal opportunity is provided in all aspects of their employment. Additionally, Executive Order 11246 prohibits federal contractors and subcontractors from, under certain circumstances, taking adverse employment actions against applicants and employees for asking about, discussing, or sharing information about their pay or the pay of their co-workers. https://www.eeoc.gov/policy/docs/psych.html

10. On September 20th 2016, Judge Warner recuses from Rusk v. Fidelity Brokerage Services. The first judge who originally recused on this case is again assigned the case - Judge Furse.

11. On or around September 22nd 2016, Rusk filed with the 10th circuit petitions for Writs of Mandamus seeking relief form the High Court commanding the lower court to rule on the motions to dismiss on the Rusk v. Fidelity Brokerages Services case (filed over nine-months ago - December 3rd 2015) and Rusk v. Cowboy Properties (filed over seven months ago March 14th 2016). On October 13rd 2016, Rusk filed for writs of prohibition with the 10th circuit commanding the lower court or defendants to not destroy or alter evidence in the cases Rusk v. State of Utah, Rusk v. Fidelity Brokerage Service, Rusk v. Cowboy Properties and Rusk v. University of Utah Healthcare Risk Management. The Third District Court in Utah as well as the U.S. District Court of Utah failed to do so when requested and statutes of limitations are running (or have already run out for some) for commanding preservation of evidence to lawfully and necessarily adjudicate these matters. Furthermore, the evidence of such could otherwise only be unlawfully obtained in a number of circumstances and the court has not allowed for discovery yet, and therefore subpena's of such evidence. For example, in the Rusk v. University of Utah Healthcare case, there is evidence showing that the records have been altered from what the University of Utah sent Rusk a few years ago v. what the University of Utah sent Rusk a year or less ago when requesting records. In the Rusk v. State of Utah, Steven Rusk and Colton Chase Christensen have deleted their email accounts and their email providers state that they only allow for three months before deleting in full. These two email accounts, among a number of additional occurrences in the last several years continually occurring thereafter, included some of the below evidence supplied to the Third District of Utah (seeking protective orders), U.S. District Court for the District of Utah and to the 10th Circut Court (seeking redress for civil rights violations): [Interestingly, DoL and DOPL of Utah, also noted that they were reaching out to these individuals via the respective emails and phone numbers in both 2015 and 2016...as they are connected to the cases above, FBS requested falsified injunctions of Christensen's for which the Utah DA failed to adjudicate when reported allowing for continued occurrences thereafter, Cowboy Properties rented to Christensen while Christensen even evaded taxes to qualify for low income housing, Christensen's and Rusk Sr.'s abuse has been provided onto the court records on a number of occasions, not to exclude physical threats/abuse in writing, sexual harassment in writing, verbal abuse in writing, trespassing to Rusk jr's residence caught by cameras of Cowboy Properties, etc. Note that Christensen has an LDS History and non-ADA conditions like Rusk and Rusk Sr. has accounts with Fidelity Brokerage Services and uses the same doctor that committed malpractice against Rusk jr. for Rusk jr's brothers who are not LGBT): Begin forwarded message: <srusk@moog.com> wrote: Colton, We do not have an answer as yet. I have had an extensive travel schedule and now we have the holidays. Please bear with us as we find a way to work through this again. steve From: Colton Christensen<

colton.christensen@yahoo.com> To: "sjjznrusk@aol.com"< sjjznrusk@aol.com>, "srusk@moog.com" <srusk@moog.com> Date: 12/16/2011 07:14 AM Subject: Zach Rusk and Colton Christensen Dear Mr. & Mrs. Rusk, I have been emailing and contacting Zach again even while he had the SLC police department call me and they informed me that Zach doesn't want any further contact from me. I believe that was back in September. Please get back to me either by email or calling my cell 801-477-7474. I look forward to your advice/ recommendations. Sincerely, Colton Christensen From: <postmaster@moog.com> Date: Saturday, October 15, 2016 Subject: To: juanmares14@gmail.com Delivery has failed to these recipients or groups: srusk@moog.com The email address you entered couldn't be found. Please check the recipient's email address and try to resend the message. If the problem continues, please contact your helpdesk. From: MAILER-DAEMON@yahoo.com Date: October 5, 2016 at 8:52:16 PM MDT To: juanmares14@yahoo.com Subject: Failure Notice Sorry, we were unable to deliver your message to the following address. <colton.christensen@yahoo.com>: Remote host said: 554 delivery error: dd Sorry your message to colton.christensen@yahoo.com cannot be delivered. This account has been disabled or discontinued [#104]. - mta1388.mail.ne1.yahoo.com

12. In early October 2016, the 10th circuit court sent back a petition for writ of prohibition against the University of Utah Healthcare Risk Management stating a jurisdictional issue, as well as returning (mailing back) to Rusk a petition for interlocutory appeal involving attempts to enjoin a number of defendants (involving a large multi-national former employer, healthcare provider and housing provider) having shown to have engaged in fraud, infringement upon due process, defamation, tortuous interference with contractual advantage and a plethora of civil right violations, not to exclude ADA and Title VII (among other protected classes) discrimination and retaliation. Included are the State of Utah, Fidelity Brokerage Services (Fidelity Investments), Cowboy Properties, University of Utah Healthcare Risk Management, Utah Third District Court, Utah DWS (Utah Department of Workforce Services), Utah DoL (Department of Labor), Utah DOPL (Department of Occupational and Professional Licensing), a U.S. District Court of Utah Judge, SSA Commissioner / Utah ODAR Office, et al, etc.

13. On Aug 24, 2016, The University of Utah stated (via http://unews.utah.edu/university-of-utah-unveils-new-thomas-s-monson-center-at-newly-renovated-enos-a-wall-mansion/) that they "unveiled the newly refurbished Enos A. Wall Mansion at an event commemorating the reopening of this historic building. The structure, in the heart of Salt Lake City, has been renamed the Thomas S. Monson Center after the current president of The Church of Jesus

Christ of Latter-day Saints (Mormons). Monson is a distinguished alumnus of the U's David Eccles School of Business, a past faculty member and an honorary doctorate recipient."

14. If not all, the vast majority of relief Rusk has requested from the 10th circuit has been ruled on with the opinions written by: Timothy M. Tymkovich and Scott Milne Matheson III. Timothy M. Tymkovich (wikipedia) Carpenter, Megan (24 September 2016). "Trump's supreme court picks: from Tea Party senator to anti-abortion crusader". The Guardian. Retrieved 12 October 2016. Timothy M. Tymkovich (wikipedia) Recent Cases: Tenth Circuit Holds For-Profit Corporate Plaintiffs Likely to Succeed on the Merits of Substantial Burden on Religious Claim, 127 Harv. L. Rev. 1025 (2014). Scott Milne Matheson III was the U.S. Attorney for the District of Utah from 1993 to 1997 and is a current federal Judge on the United States Court of Appeals for the Tenth Circuit. Religion: Mormonism. November 2016 was the U.S. Presidential Election. Hatch Act: Violations of the Hatch Act and of government ethics rules on misuse of official positions are not permissible in any circumstances, including in the case of an executive branch official acting under pressure from politically motivated members of Congress. Specifically, the Hatch Act bars the use by a government official of his position to influence an election. Notably, whether one has a specific "intent" to do so is irrelevant.

15. Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Rehabilitation Act"). 42 U.S.C. §§ 12131-12134 states: (1)Public entity The term "public entity" means— (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) [1] of title 49). (2)Qualified individual with a disability.

16. The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. (Rusk has been diagnosed with Aspergers - mild form autism spectrum from a world renowned top five medical institution called Menninger Clinic. Rusk also has been diagnosed with Tourette Syndrome, Scoliosis, Attention Deficit Disorder, Dispraxia (speech and language impairment), Chronic Dry Eye Syndrome / film tears in the cornea/retina/eye, etc.)

17. Definition: indigent -- 1) n. a person so poor and needy that he/she cannot provide the necessities of life (food, clothing, decent shelter) for himself/herself. 2) n. one without sufficient income to afford a lawyer. If the court finds a person is an indigent, the court must appoint an attorney to represent him/her. This Constitutional right of counsel for the indigent was determined by Gideon v. Wainright in 1963. 3) adj. referring to a person who is very poor and needy. Rusk has shown the courts evidence that he fits in this category. The courts have requested nothing else to validate otherwise.

18. Dated 10-8-2008, staunch republican U.S. Senator Orrin Hatch writes Rusk: '' Dear Zach, I'm so proud of you fighting back and winning. You're a great young man. PS. I am the prime author of the Americans with Disabilities act that just got passed and signed into law by the president a few weeks ago. My Best, O. ''

19. On or around September 17th 2016 Justin Schoenrock (son of James Mooney who was put in prison on false charges by the Utah State Government) wrote: ''they threatened him with everything but it never worked'' Zachary Rusk wrote: ''who was it that threatened him?'' Justin Schoenrock wrote: ''Utah state govt'' Zachary Rusk wrote: ''How did they threaten him'' Justin Schoenrock wrote: "Prison for life and tried to get his attorneys disbarred" Charges dropped Mooney links action to top court's ruling, vows to resume ceremonies: "My feelings are, without a doubt, a lot of gratitude for the Constitution of the United States," Mooney said. "I'm honored that I, for whatever reason, was chosen to make a stand under all kinds of opposition." The couple has survived prosecution by the Utah County Attorney's Office, whose charges were thrown out by the Utah Supreme Court. Now the Mooneys have dodged the possibility of facing several decades in federal prison. "It is totally unconstitutional," Mooney said about the agreement, adding the U.S. Supreme Court has made it "crystal clear" about his rights. The group had claimed it had a constitutional right to use the tea under the Religious Freedom Restoration Act of 1993. Chief Justice John G. Roberts noted that the use of the tea was "a sincere exercise of religion". http://www.deseretnews.com/article/635186785/Peyote-charges-dropped.html?pg=all

20. July 27th 2016: Case against former Utah A.G. Mark Shurtleff is off; Swallow prosecution still on'' A state judge dismissed criminal public corruption charges against Mark Shurtleff on Wednesday, ending the former Utah attorney general's two-year legal tussle. '' '' The dismissal was granted without prejudice, meaning the case could be filed again, although that seems unlikely. '' '' Filed on July 18, the Rawlings motion also pointed to a recent U.S. Supreme Court ruling that narrows the scope of potential prosecution for political corruption, along with his inability to pry possibly key evidence out of federal hands, and concerns about

potential violations of Shurtleff's right to a speedy trial. '' http://www.sltrib.com/home/4165972-155/shurtleffs-charges-dismissed

21. On or around October 18th, Cowboy evicted Rusk even while Risk has turned in his keys and left the premises on late July 2016. Although, Rusk did not have the money or resources to move all of his belongings out because of the incapacitations including buldging disks caused by the colluding defendants (first and foremost, FBS for not granting Accomodations reasonably and promptly like they had for those without ADA conditions and who had 'served LDS mission' on their resumes, as well as wore 'garments'. (Rusk requested a sit stand work station and lesser or different hours aside from the overtime requirements - Rusk is 6'5" with a full thoracic spine titanium Harrington rod fusion that FBS and the defendants also knew about).

22. On Monday, October 17, 2016 a COMPLAINT was filed against Paul Warner with Exhibit A, originally received by the court on 09/20/2016. On Thursday, October 20, 2016 a Memorandum of a More Definite Statement was filed with the court. Included is evidence of how Judge Warners statements are defamatory and can be seen to have deterred attorneys from wanting to help Rusk for a number of reasons, not to exclude the afore- and below- noted. Warners response is due in late this month/December of this-year/2016. (Rusk has reached out to pretty much every attorney in the area that may practice this kind of law, as well as those in other states not to exclude utilizing referrals, and websites such as the Utah bar, etc. Some of this has been shown in this case, and is shown in the Rusk v. Warner case as well as exhibits, not to exclude others and more that can also be provided upon request).

23. Oct 21st, 2016, the Rusk v. University of Utah Healthcare was accepted to the Supreme Court of Utah according to a notice / mailing from the 10th Circut. On October 25th, this (Rusk v. UoU Healthcare case) was ordered down to the Utah Appellate Court from the Utah Supreme Court. ''In the United States, a state supreme court (known by other names in some states) is the ultimate judicial tribunal in the court system of a particular state (i.e., that state's court of last resort). Generally, the state supreme court, like most appellate tribunals, is exclusively for hearing appeals of legal issues. The U.S. Supreme Court may hear appeals from state supreme courts only if there is a question of law under the United States Constitution (which includes issues arising from federal treaties, statutes, or regulations). https://en.wikipedia.org/wiki/State_supreme_court ''You cannot appeal your state judgment in federal district court. Federal district courts do not have authority to review the decisions of state courts. By contrast, the United States Supreme Court has authority to review certain

decisions by state courts." http://www.publiccounsel.org/tools/materials/files/GUIDE-Can-I-Appeal-My-State-Case-to-the-District-Court.pdf

24. On October 31st, the petition for writ of prohibition was dismissed by Timothy M. Tymkovich claiming that it was frivolous. Just before, Timothy M. Tymkovich dismissed judicial misconduct complaints stating that there is no 'inference' and when Rusk supplied inference in the petition for review by the judicial counsel, Timothy M. Tymkovich, Warner recused and Timothy M. Tymkovich blatenly denied the petition for review by the judicial counsel with a blanket statement claiming that it was meritless without any reference as to why in terms of the verifiable facts stated therein, let alone the law itself, unlike Rusk's petitions. This is just like how Warner started responding to motions for appointment of counsel, motions for protective orders, motions for preservation of evidence, where Warner essentially denied most or all of those with incorrect facts, libelous and slanderous misrepresentative mischaracterized statements along with defamation to attempt to get attourneys and and people to distance themselves from Rusk while trying to destroy Rusk's credibility to infringe upon due process for Rusk and people like Rusk and to deter and bar people from obtaining redress for bringing forth strong claims of Title VII (along with that of the ADA). Much of this occurred around October 31st when Rusk insinuated in writing to the defendants and 10th Circuit Court Clerk (used as an alternative option and leverage in attempts to engage in reasonable and practical settlement discussions) that he may have to plan to file an FTCA claim.

25. On Thursday, November 03, 2016, Rusk filed with this court one each case a ''Notice of Scotus Petition for Writ of Certiorari, Interlocutory Appeal" with much or all of the above enclosed. The same day, the court stated via docket text: '' ORDER declining 14 Motion to Dismiss because Mr. Rusk appears pro se and should have the opportunity to first provide a more definite statement by amending his complaint ; granting 14 Motion for More Definite Statement. The Court gives Mr. Rusk thirty (30) days to file an amended complaint in compliance with the standards described in this Order Signed by Magistrate Judge Evelyn J. Furse on 11/3/16. (jlw) "

26. On Friday, November 04, 2016, ''ORDER: All judges in this court have recused from presiding in this case filed against one of our Magistrate Judges, Paul M. Warner. As provided in DUCivR83 2(b), because all judges recuse themselves, "I now request the chief judge of the Tenth Circuit Court of Appeals to assign a judge from another district within the circuit to hear the matter." Signed by Judge David Nuffer on 11/4/2016. (jwt) "

27. On Tuesday, November 15, 2016, the court also stated via docket text: ''ORDER granting 48 Motion to Limit Contact. The Court ORDERS FBS and its agents to limit their contact with

Mr. Rusk to non-threatening, relevant matters involving this litigation. FBS should notify its current employees and agents of this restriction. The Court understands FBS cannot control its former employees and thus makes no order as to them. Violation of this Order may result in sanctions. Signed by Magistrate Judge Evelyn J. Furse."

28. On Friday, November 18, 2016, the Rusk v. Warner Case was reassigned to Judge Robin J. Cauthron for all further proceedings.

29. On Thursday, November 17, 2016, the court uploaded Rusk's amended complaint with exhibits A-R.

30. On Wednesday, November 23, 2016 the court wrote via docket text on the Rusk v. Cowboy Properties case: "REPORT AND RECOMMENDATIONS re 32 Second MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION for More Definite Statement filed by Cowboy Properties. Signed by Magistrate Judge Dustin B. Pead on 11/22/2016." The court also stated: "On Wednesday, November 23rd, 2016, the Court ordered Plaintiff to reply to it's order and "provide a more definite statement as it pertains to additional detail concerning the dates of his alleged protected conduct and Defendant's allegedly-discriminatory actions". Likewise, the Court ordered Plaintiff to "number the paragraphs of his complaint". In addition, Plaintiff appreciates the courts understanding so far as stated in the following: "Plaintiff claims that on June 30, 2015, he applied to rent a subsidized apartment at an apartment complex operated by Defendant. Plaintiff disclosed his alleged disability, Tourette Syndrome, on the application for housing. Later, Defendant's apartment manager at the complex told Plaintiff that he must submit evidence that his Unemployment Income would not be paid for longer than 26 weeks. Plaintiff suggests two problems with this requirement. First, the form letter Plaintiff received from the Department of Workforce Services ("DWS") awarding benefits indicated that payments lasted only 26 weeks. Second, Plaintiff claims that he and the manager called DWS and a representative told Plaintiff and the manager that a second letter would not be provided, but the representative confirmed that Plaintiff would receive benefits for only 26 weeks... Next, Plaintiff alleges that Defendant retaliated against him after he filed a housing discrimination claim with the Denver Regional Office of the U.S. Department of Housing and Urban Development. Plaintiff alleges that after he filed the housing discrimination charge, a manager of another of Defendant's properties where Defendant resided, told Plaintiff he would not receive his packages because the delivery person required a signature. Plaintiff claims that when he contacted the delivery company, he was told that no signature was required for delivery. Defendant has not persuaded the court that Plaintiff's discrimination claim is deficient. In its supplemental briefing, Defendant claims

Plaintiff's complaint "is entirely lacking of any dates/time" of Defendant's alleged wrongdoing, does not describe any harm Plaintiff suffered, and does not "set forth what specific legal right [Plaintiff] believes [Defendant]'s alleged actions violated." (ECF No. 59 at 3 (emphasis original).) The court disagrees. Plaintiff alleges that he applied to rent an apartment from Defendant "on June 30th 2015." (ECF No. 29 at 1.) Plaintiff alleges that Defendant's actions "caused [Plaintiff] over 10k in capital damages in terms of the difference between rent rates for which [he] had available at the time, and the rent [Plaintiff] could have received if [he] was not discriminated against . . ." among other damages. (Id. at 3.) Finally, Plaintiff alleges that Defendant's alleged discrimination violated "Title VIII of the Civil Rights Act of 1968 (Fair Housing Act)." (Id.) While the complaint is not as polished as some submitted by experienced counsel, the discrimination claim easily meets the notice pleading standard applicable to a pro se plaintiff. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."). By a very narrow margin Defendant persuades the court that Plaintiff's retaliation claim lacks sufficient detail, primarily dates, and Plaintiff should therefore be ordered to provide a more definite statement. When addressing the retaliation claim, Defendant once again claims that Plaintiff does not identify a specific legal right he believes Defendant violated. The court cannot agree because Defendant alleges his "retaliation claim[]" constitutes "a violation of Title VIII of the Civil Rights Act of 1968 (Fair Housing Act) . . . ." (ECF No. 29 at 3–4.) Defendant argues that Plaintiff does not properly allege what Defendant did to Plaintiff or how its actions harmed Plaintiff. This argument is a bit confusing and lacks any reference to the legal standard applicable to an FHA retaliation claim. To state a prima facie case of retaliation: plaintiff must [allege that] (1) []he is a member of a protected class under the Fair Housing Act; (2) []he exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination motivated defendants' conduct, at least in part; and (4) defendants' conduct constituted coercion, intimidation, a threat, or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606. Zhu v. Countrywide Realty, Co., 165 F. Supp. 2d 1181, 1196 (D. Kan. 2001). Plaintiff alleges a retaliatory act. He claims that after he (a disabled person) made a housing discrimination complaint to Denver Regional Office of the U.S. Department of Housing and Urban Development, Defendant refused to accept mail on Plaintiff's behalf. Defendant stated that the courier refused to leave a certain package unless a signature was provided. When Plaintiff contacted the sender and the courier, he was told no

signature was required. Plaintiff alleges these actions were retaliatory.1 Additionally, it is unclear what Defendant intends by arguing a lack of harm. Harm is not an element of a prima facie FHA retaliation claim. The closest element to harm is the fourth element regarding coercion, intimidation, threat or interference. Yet, Defendant does not address this, or any other, element of Plaintiff's prima facie case. This is particularly puzzling because the court explicitly ordered Defendant to address Plaintiff's retaliation claim. (See ECF No. 56.) Next Defendant argues that Plaintiff's complaint is "devoid" of any chronology or description of Defendant's alleged wrongdoing. While the court finds the complaint is not "devoid" of any chronology, it agrees that it contains insufficient information. Plaintiff alleges that Defendant interfered with Plaintiff's receipt of packages and that this occurred only after Plaintiff made a complaint to the Denver Regional Office of the U.S. Department of Housing and Urban Development. Nonetheless, given the importance of the timing of Plaintiff's complaint in relation to the allegedly retaliatory conduct, the court agrees with Defendant that Plaintiff must provide more detail about the timing of these alleged events. See Zhu at 1199. While Plaintiff may not be able to provide the exact dates and times, he must provide the court and Defendant with his best approximation of the dates on which he made his complaint and the dates on which he alleges Defendant retaliated against him. Finally, the court rejects Defendant's argument that Plaintiff failed to meet Rule 8's notice- pleading standard. This standard does not exist in a vacuum. Plaintiff's allegations must be measured against the elements of his claims. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556–57 (2007). Defendant makes no effort to cite or discuss the elements of Plaintiff's claims. Accordingly, Defendant does not persuade the court that Plaintiff failed to plead sufficient facts to support his claims for discrimination and retaliation under the Fair Housing Act. Likewise, while the court notes that Defendant is correct that Rule 10 requires separately numbered paragraphs, the court does not find Plaintiff's omission here warrants dismissal. Plaintiff should separately number his paragraphs, but in the event he does not, Defendant's should respond as best as it can rather than file further motions regarding paragraph numbers. Plaintiff may file an amended complaint no later than fourteen (14) days after being served with a copy of the District Court's decision adopting this Report and Recommendation."

31. Monday, November 28, 2016, Rusk filed a reply in the Rusk v. Cowboy Properties case. The same day, the Utah Courts Director of Security viewed Rusk's linkedin profile. The next day, Tuesday, November 29, 2016, the Third District Court finalized judgement in the Cowboy Properties Liberty Gateway v. Rusk case. The following day, Wednesday, November 28, 2016, the Third District Court dismissed the Rusk v. Kass Harstad et al / Stringberg and Scholnick

case. Rusk filed for / sought a writ of certiorari with the Utah Supreme Court on November 30th 2016.

32. On Thursday, December 01, 2016, FBS replied to Rusk's amended complaint and moved the court to dismiss this case in its entirety or, in the alternative, moved for a more definite statement.

33. FBS claims that the Amended Complaint does not comply with the pleading requirements of Rules 8(a) or 10(b) of the Federal Rules of Civil Procedure. Rusk disagrees. On November 10, 2016 7:28:28 PM, Rusk wrote FBS' counsel, Jason Boren, via email, with the following entitled ''Final Amended Complaint & Exhibits A-R'' with the afore-noted attachments: '''Jason, Hope your week was well and that you have an enjoyable holiday weekend. 1) See attached. 2) The first attachment is the amended complaint of 43 pages, entitled "Final FBS Amended Complaint". 3) The last two pages in the amended complaint are a table of contents intended to help make it easier for you, your client, and the Court to review. 4) The second attachment includes the exhibits A-R, totaling, by itself, 264 pages. This attachment is entitled "Exhibits A-R to Final FBS Amended Complaint Draft XIII". 5) Adding the exhibits and complaint together, gives us 306 pages in total. 6) The complaint itself, is well under 90 [ninety] pages. 7) In the complaint, I have referenced the exhibits with specific pages that can apply to each reference, as footnotes in the sections where they may be helpful. 8) To my understanding now, thanks to your feedback and human decency, I have listed every paragraph with it's own number. 9) Each claim is also delineated by it's own paragraph, inclusive of a differentiating paragraph number. 10) I have included defendants liable after listing some of the factual allegations to each claim, after each claim listed. 11) My understanding of each claim is that each claim needs to reference a law, or right for which relief may be granted, as well as, perhaps, injury, for which are both within each paragraph that lists a claim. The intent of this is to try and cover all bases. 12) A law or right or claim in where relief can be granted, to my understanding, is something such as 'Americans with Disabilities Act of the Civil Rights Act of 1964, as amended', 'Title VII of the Civil Rights Act of 1964, as amended', 'Reprisal for Engaging in Protected Activities', others, or even a combination there-of. 13) The claims are listed between paragraphs 8-29. These paragraphs are between pages 8-36. 14) The first paragraph of the complaint entitled 'introduction', re-states the order. My understanding now is that I need to either re-state the order as to the basis for this pleading in the introduction, or re-state what the opposing counsel/party stated/argued in any allowable reply to their/your pleading submission(s). 15) As it pertains to the motion to dismiss, my understanding is that I will receive one more chance to reply in rebuttal (should that be the correct terminology to use), after you / your client reply to this amended complaint. 16) I have also included a

number of paragraphs (such as the EO) that include additional laws or application of other relevant regulations, as well as further arguments to supplement necessary information/claims, drive home the points that you would perhaps argue otherwise, before you may attempt to argue them (trying to save you time as well), or perhaps just because the court may not be able to assume on my behalf and it could become relevant at some point if not stated from the get go. 17) When you reply, it's now my understanding that you need to reply individually to each of my paragraphs in opposition or agreement, and anything you do not oppose is deemed admitted. It's my understanding now that I need to do the likewise as well, paragraph by paragraph. 19) As much as I can try to understand and comprehend the rules, as well as guidelines set forth in the order, it appears to me, that I'm now following it, at least to the best of any perhaps reasonable knowledge and abilities that I may or may not posses. 20) I believe this is the last and final draft, unless you have any objections, additions and/or subtractions that you think would be reasonable, practical, appropriate and/or necessary for me to amend/ revise one more time before the submission. If so, please tell me, ASAP. If you could please let me know either way, I would appreciate it. If you can please confirm you've received this, I would certainly appreciate that at the very least. I plan to get this printed tomorrow and mail it into the court on Saturday via USPS here in Smithfield. 21) It's my understanding that I can serve this to you for your client via email. If you and/or your client need me to send you a physical copy, I'm happy to do so when my SSDI funds come in on Wednesday. Let me know if you would prefer and/or need that, or if you are ok with me providing you with just this electronic version as we have been doing otherwise (by accepting this and any other necessary future pleadings via email, certainly, this will be in higher quality as a result, among serving a number of other benefits to you and your client). Zach ''

34. FBS claims that ''the Amended Complaint fails to provide adequate factual allegations to put FBS on notice about which alleged facts support his claims for relief.'' Rusk disagrees. See above. Also note that p.8-p35 show claims in a paragraph form with each claim/paragraph numbered as one between 8-29. This means that there are 21 claims. Each claim in the complaint denotes 1) which law applies and/or is violated 2) Factual Allegations 3) Injury 4) Defendants liable.

35. FBS claims the allegations are ''generic''. With all due respect, Rusk disagrees. It can be seen that FBS and it's counsel will continue to evade responding specifically to each claim made because they do not want to lock themselves into acknowledging their unlawful conduct. Furthermore, on Tuesday, January 12, 2016, FBS filed a motion with almost the identical intent/claim.

36. FBS claims that the Amended Complaint does not properly include numbered paragraphs, each limited to a single factual circumstance. Rusk again respectfully disagrees. It can be seen that Rusk does properly to the best of Rusk's reasonable knowledge and abilities number paragraphs and limit each to a single factual circumstance.

37. FBS claims that the Amended Complaint attaches a barrage of hundreds of pages of exhibits, incoherent passages, and ramblings. Rusk disagrees. It can be seen that the complaint and corresponding exhibits provide quite coherent and relevant passages that certainly do not ramble either.

38. FBS claims that due to ''unintelligibility''… it would be impossible for FBS to frame a meaningful answer or otherwise respond. It can certainly be seen that it would be unintelligible and non-sensical for FBS to claim that it would be impossible for them to frame a meaningful answer or otherwise respond to the amended complaint and waste their now third bite at the apple and that of an opportunity to respond specifically.

39. FBS claims the Complaint did not clearly identify the defendants that Mr. Rusk is charging with discrimination. Rusk disagrees: See: Case 2:15-cv-00853-JNP Document 4-1 (Exhibit A) Filed 12/15/15 Page 2 of 2, lists people such as ''Manager; Greg Proctor''. It also includes ''Charity Swanson, Director SVC; Don Montgomery, Director HNW; Jeff Newbold, Director; Hayley Curtis, Director'', etc. Rusk had been told by Kass Harstad - Attourney / Partner for Strindberg & Scholnick litigating for ''Employment & Labor Law'' that each occurrence can be tied all the way up to the director in the occurrences listed and denoted as 'claims'. Furthermore, if needed to be restated, the exhibit also includes for reference: ''Stacey Schmidt, Associate General Council for Discrimination; Jewel Ellis, HR Director; Andrea Jung, HR VP; Ellen Riggi, Senior Accomodations Specialist/Approver; Curtis Dudley, Manager; Greg Proctor, Manager; Mark Fenton, Supervisor; Melinda Nelson, Supervisor; Troy Koon, Supervisor; Adam, Supervisor; Cory Fillmore, Manager (Licensing and Registration and later SVC); Budd Black, Manager (T&D and later SVC Manager); Mitchell Stout, Manager (T&D); Chris Colgan, Compliance Director; Karen Rider, Manager (RET); Kevin Goff, Manager (RET); Mark Gines, Manager; Nikki Gore, Manager (Annuities); Wesley Odekirk, Manager (Annuities); Lance Frival, Manager (HNW); Laurie Ann Thor, Manager (ER); Jay Ball, Manager (ER); Karen Tenney, Manager (ER); Scott Buchanan, Manager (ER); Greg Gallagher, Manager/Director (HNW); David Stephansen, Manager (HNW); Timothy Neath, Manager (SDB/HSA); Alex Castillo, Manager (SDB/HSA); Matt Webber, Manager (SVC); Darrin Farr, Manager (SVC); Zan Hughes, Manager SLC IC; Tad Harris, IC RPC; Tyler Kerby, Supervisor; Garret Johnson, Supervisor; John Klindt,

Supervisor; Jimmy M Florio, Systems Analyst; Rasheed Abdullah (Technology); Sarah Metcalf (AA); Gina Acker (AA); Gary E. Stevens,Vice President, Chief Ethics Officer PWI Risk and Compliance, Theresa Andes (Compliance Office), Jenny Spitzmueller (Ethics Office), Jessica Demill, Supervisor; Aaron Fox, HD/Supervisors Manager; George Yzejian, Operations; Brent Nelson, SFS/Processing Specialist (Ops); Max Brown, Supervisor; Kris Liacopoulos, GM GTW/AFK;"

40. FBS claims the exhibits contained a barrage of random information, including, but not limited to, random text- messages and emails; Facebook posts; random notes or journal entries; long lists of random names; nonsensical passages; lists and details regarding various awards Mr. Rusk received; X-ray results; test results from "FINRA Procter Certification Testing Center"; and references to various laws and "counts". On the contrary, they the above noted can be seen as evidence and examples in showing how FBS discriminated and retaliated - including who was treated differently, who identified as LDS and non-disabled, unlike Rusk, who also were in fact the true ones shown to have engaged in unprofessional and inappropriate communications with peers and therefore not defamed unlike Rusk, names for examples of some of those specifically involved, demonstration of how Rusk was an extremely good employee and contributor to FBS, etc.

41. FBS claims that The Amended Complaint does not contain numbered paragraphs that are limited "as far as practicable to a single set of circumstances. This is not true and a deflection because FBS does not want to answer specifics that will lock them into a number of problems down the road.

42. FBS then claims that ''the Amended Complaint's paragraphs appear to contain factual allegations". This one is certainly quite dumbfounding given what they said originally as to not doing so in the same document just earlier noted. If the court cant see this or choses not to, this would appear to be quite the concern for societies best interests... They further claim ''these allegations are vague and conclusory and do not provide sufficient detail to allow FBS to investigate them and determine their accuracy.'' This is also dumfounding. This appears to be quite the general statement and provides no example as to what or how they need to hear it to be able to answer. This leads a reasonable person to wonder if FBS needs to be spoon fed the facts, along with an perhaps an interpreter, or other accommodations, even, who really knows. In any event, how can Rusk possibly state it any differently within reason and practicality, not to exclude his incapacitations caused by the colluding defendents, not to mentioned having been blackballed from access to counsel as shown/noted in part above with examples in formerly supplied exhibits in this case as well as in Rusk v. Warner, Rusk v. Kass

Harstad, et al., etc cetera. FBS states that 'The Amended Complaint also does not identify the specific FBS managers or employees whom Mr. Rusk is charging with discrimination, or whom allegedly acted in any particular instance. ''. Incorrect again. See #39 above as well as #34 as it pertains to the amended complaint 'claims' w/'liabilities' sections. They even claims ''Rusk fails to identify which individual in FBS's management allegedly asked Mr. Rusk about his religion, when that conversation allegedly took place, what Mr. Rusk allegedly told the manager, or any other related details.'' This is shown in not only the complaints but also the exhibits. For one example, see page 12 of 43 number 11 which states Greg Proctor (also see exhibit B page 2 (and rather straight through 19 int eh same exhbit...) as also already noted in the complaint itself). How could they miss this? It appears quite clear actually.  It also appears to be very simply illustrated...in the attempts to 'show v. just tell'...

43. FBS claims, ''while Mr. Rusk does claim that "Defendants liable" for this "claim" include ten individuals, he does not identify any of their roles in the various facts alleged in that paragraph". See #39 above and etc again..

44. FBS claims 'edited and unintelligible screenshots' but fails to state and/or supply evidence of what specifically they are claiming is edited let alone state why specifically they feel it is un-intellagable.  Once again, Rusk most certainly disagrees in full. This is quite concerning that they claim this and can only make a reasonable person wonder that FBS is going to try and fabricate things going forward to deflect their problems. The court should be very wary of this... Furthermore, the court has already received much of this earlier and its been noted by the court that the plaintiff need not provide all or even perhaps any evidence at this juncture... if more is needed and there are any issues of material facts with providing uncontroverted contrary evidence, FBS can try to supply such and/or we shall enter discovery after a motion to dismiss can be survived.

45. On December 8th, 2016, Liberty Gateway of Cowboy Properties, filed a proposed order for application of a writ of execution moving the [state] court to essentially issue immunity to Cowboy Properties/Liberty Gateway in the Rusk v. Cowboy Properties federal court case. (2:16-cv-00204) in the form of a 'chose/counter-claim/cross-claim/etc', since they claim Rusk's assets are di-minimus and attempt to plead to the court that such  a 'personal injury recovery' is non-exempt property, which Rusk pleads is incorrect pursuant to Utah law under §78B-5-505 and §78B-5-506.

## CAUSE OF ACTION

## INTENTIONAL TORTUOUS INTERFERENCE WITH INFLICTION OF EMOTIONAL DISTRESS

(Against the United States of America for damages)

8. Plaintiff incorporates by reference the allegations of the original Complaint (Re: Rusk v. Warner 2:16-cv-00976) as though set forth herein.

9. Defendant Warner engaged in, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress to Plaintiff.

10. As a proximate result of the acts alleged herein Plaintiff suffered severe or extreme emotional distress and serious violations of due process, entitling him to damages in the amount of multi-millions in capital/compensatory damages and further punitive amounts to be proven at trial.

## CAUSE OF ACTION

## ABUSE OF PROCESS

(Against the United States of America for damages)

18. Plaintiff incorporates by reference the allegations of the original Complaint as though set forth herein.

19. Defendant Warner willfully and wrongfully created the purported his factually incorrect, defamatory, mischaracterized and misleading orders and willfully and wrongfully purported to do so with the motive of using his orders and public docket / record to retaliate against Plaintiff for engaging in protected activities as a Judicial Officer/Official of the Court and otherwise to harass and harm Rusk, as well as attempt to block Rusk from reasonably and rightfully petitioning for governmental redress. Warner allegedly through these actions, violated the fourteenth amendment, including clause(s) involving due process. Due process is the fair treatment through the normal judicial system, especially as a citizen's entitlement. The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. Warner allegedly also willfully violated 42 U.S. Code § 1983 which states the Civil action for deprivation of rights: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. Warner intentionally delayed justice which caused further damages. Justice delayed can be seen as justice denied.

20. As a proximate result of the acts alleged herein, Plaintiff is entitled to damages such as the below prayer for relief and/or in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

Awarding general and compensatory damages under the FTCA against the United States in the requests for relief in the below noted 'linked' cases, less any settlement/judgement amounts arising from these cases prior to, and/or an[y further] amount[s] to be proven at trial.

Cases Linked: U.S. District Court of Utah Cases: 2:16-cv-00976 Rusk v. Magistrate Judge Paul Warner; 2:15-cv-00853; 2:16-cv-00204 Rusk v. Cowboy Properties; 2:16-cv-00333 Rusk v. State of Utah; 2:16-cv-00332 Rusk v. Utah ODAR Office et al; Utah Third District Court: 160905193 Rusk v. Kass Harstad et al / Stringberg and Scholnick; 160905195 Rusk v. Deborah Bilder, MD / University of Utah Healthcare Risk Management; etc.

**DECLARATION:** I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

**CERTIFICATE OF SERVICE:** I hereby certify that a copy of the foregoing amended complaint and it's attached exhibits has been transmitted to Defendant(s).

**SIGNATURE:** Respectfully submitted on this 12th day of December 2016.

/s/ Zachary R. E. Rusk

Attachement: Memorandum in Support re: Rusk v. Warner 2:16-cv-00976